THOMAS DAVIS, Bar No. 202382
Email Address: tdavis@deconsel.com
JODI SIEGNER, Bar No. 102884
Email Address: jsiegner@deconsel.com
members of DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

ATTORNEYS FOR PLAINTIFFS, CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES
FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, <br><br> Plaintiffs, <br><br> v. <br><br> EVERLAST BUILDERS, INC., a California corporation; VASILIS ANDREA TSANGARIDES, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR: <br><br> 1. DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS AS TO EVERLAST BUILDERS, INC.; <br><br> 2. DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION FUNDS HELD AS TO VASILIS ANDREA TSANGARIDES |

**JURISDICTION**

1.   This is a civil action to recover fringe benefit contributions, and for defalcation of fiduciaries. This action arises and jurisdiction of the court is founded in section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185a, and sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.

# FIRST CLAIM FOR RELIEF
# (DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS AS TO EVERLAST BUILDERS, INC.; and DOES 1 THROUGH 5)
# PARTIES AND OTHERS

2. CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3. At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as PLAINTIFFS.

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown to PLAINTIFFS, who therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when they have been ascertained.

6. At all relevant times, Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186, and multiemployer plans within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

7. At all relevant times, the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

8. At all relevant times, the Carpenters-Contractors Cooperation Committee ("CCCC"), and Western States Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., were and are non-profit California corporations which exist pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

9. CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, the Carpenters-Contractors Cooperation Committee, and the Southern California Drywall Industry Fund, the Western States Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., and the Grievance Obligation Trust Fund (collectively, the "PLANS"), and, as such, is a plan fiduciary within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

10. The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any and all amounts due and owing to the respective PLANS by the employer as herein alleged.

11. Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America, are labor organizations that are parties to the collective bargaining

1 agreements involved.

2     12. At all relevant times, employer, EVERLAST BUILDERS, INC., a California corporation, and DOES 1 through 5, ("EMPLOYER") was and is a California corporation and contractor engaged in the construction industry within the jurisdiction of the relevant UNIONS.

    13. At all relevant times, the following individuals, were and are officers of EMPLOYER, as follows: VASILIS ANDREA TSANGARIDES, Responsible Managing Officer, Chief Executive Officer and President; and DOES 6 through 10, ("INDIVIDUAL").

## OPERATIVE ALLEGATIONS

    14. On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, a Carpenters Memorandum Agreement dated March 18, 2016 ("MEMORANDUM AGREEMENT"). A true and correct copy is attached hereto, marked as Exhibit "1" and incorporated herein by reference.

    15. Paragraph 8(a) of the MEMORANDUM AGREEMENT provides as follows:

> In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Contractor performs any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Contractor (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) ownership, management or control, the terms and conditions of this

Agreement will be applicable to all such work

16. The MEMORANDUM AGREEMENT binds EMPLOYER to the terms and conditions of the Master Labor Agreement between the United General Contractors Association, Inc. and the Southwest Regional Council of Carpenters and its affiliated Local Unions, United Brotherhood of Carpenters and Joiners of America, dated July 1, 2012, and any renewals or subsequent Master Labor Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements (collectively referred to as "AGREEMENTS"). The PLANS are third party beneficiaries of the MEMORANDUM AGREEMENT and Master Labor Agreements.

17. The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

18. The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid. Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

19. In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the

sum of $30.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater. This amount shall become due and payable to the CSAC as liquidated damages in addition to the unpaid contributions or contributions paid late.

20. EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of the AGREEMENTS.

21. EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing the PLANS from EMPLOYER the amounts set forth in Exhibit "2".

22. The AGREEMENTS require EMPLOYER to pay for the expense of auditing EMPLOYER's business records if an audit by the PLANS indicates that EMPLOYER failed to report and pay all contributions. A true and correct copy of Audit Invoice 21425, and Audit Invoice C9379 (with social security numbers redacted) is attached as Exhibit "3".

23. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the contributions from the first of the month following the date due, at the rate prescribed by the AGREEMENTS.

24. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount equal to the greater of interest on the unpaid contributions as prescribed by section 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated damages provided for under the AGREEMENTS.

25. It has been necessary for PLAINTIFFS to engage counsel to bring this action to recover the delinquent fringe benefit contributions. Pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2),

EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this matter.

26. The PLANS have complied with all conditions precedent.

27. CSAC has, concurrently with the filing of this complaint, served a copy of the same upon the Secretary of Labor and Secretary of the Treasury.

## SECOND CLAIM FOR RELIEF
## (DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION FUNDS HELD IN FIDUCIARY CAPACITY AS TO VASILIS ANDREA TSANGARIDES; and DOES 6 THROUGH 10)

28. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 27 of their First Claim for Relief and allege a Second Claim for Relief against VASILIS ANDREA TSANGARIDES, an individual; and DOES 6 through 10 ("INDIVIDUAL") for Defalcation of Fiduciary by the Misappropriation of Vacation Funds Held in Fiduciary Capacity by EMPLOYER as follows:

29. The Vacation Plan (which includes the supplemental dues) was created by a collective bargaining agreement which consists of Trust Agreements and a Master Labor Agreement (collectively, "AGREEMENTS"), between the United General Contractors of California, Inc., the Building Industry Association of Southern California, Inc., the Engineering Contractors' Association, Inc., and the Southern California Contractors Association, Inc., on behalf of their respective eligible members, and the district councils affiliated with the United Brotherhood of Carpenters and Joiners of America.

30. The AGREEMENTS obligate EMPLOYER to include the amounts to be paid to the Vacation Plan in the individual employees taxable income and to submit the amount so deducted monthly to the Vacation Plan.

31. PLAINTIFFS are informed and believe, and, based on such information

and belief, allege that during the period of February 2014; October 2015; December 2015; January 2016; March 2016; April 2016; and June 2016 through September 2016, INDIVIDUAL withheld funds from EMPLOYER'S employees. INDIVIDUAL failed to properly forward the withheld funds to the Vacation Plan, in an amount to be proven at trial. By acting in this manner, INDIVIDUAL exercised discretionary authority or control over the assets of the Vacation Plan and were thus a fiduciary.

32. PLAINTIFFS are informed and believe, and, based on such information and belief, allege that EMPLOYER was, and still is, justly and truly indebted to said Vacation Plan (as to contributions only) in an amount as set forth in Exhibit "4."

33. In assuming the obligations to ascertain and report contributions to the Vacation Plan, INDIVIDUAL entered into a fiduciary relationship with the Vacation Plan, and was thereby obligated to pay the Vacation plan all monies withheld from the employees' wages.

34. PLAINTIFFS are informed and believe, and, based on such information and belief, allege that by failing to segregate trust property, by misappropriating or failing to account for trust property and by failing to timely tender funds withheld from employees to the Vacation Plan, INDIVIDUAL breached his fiduciary obligation and thus engaged in defalcation.

35. At all times material herein, INDIVIDUAL is and was a fiduciary with respect to the PLANS within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because he exercised discretionary authority or control respecting management of disposition of assets of the PLANS.

36. By engaging in the acts and omissions described herein, INDIVIDUAL caused assets of the PLANS to inure to the benefit of an employer, namely EMPLOYER, and not to the benefit of participants in the PLANS and his beneficiaries and not for defraying reasonable expenses of the PLANS. These actions were in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

WHEREFORE, PLAINTIFFS pray for judgment as follows:

**FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF**
**(DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS AS TO AS TO EVERLAST BUILDERS, INC.; and DOES 1 THROUGH 5);**

1. For unpaid contributions in the sum of $96,546.25;
2. For interest and liquidated damages, as provided in the AGREEMENTS;
3. For audit costs;
4. For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate prescribed by law), or liquidated damages as provided in the AGREEMENTS, in an amount to be determined.

**FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF**
**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION FUNDS HELD IN FIDUCIARY CAPACITY AS TO VASILIS ANDREA TSANGARIDES; and DOES 6 THROUGH 10)**

1. That the court determine that INDIVIDUAL is liable for the funds withheld from employees for the Vacation Plan in the sum of $22,913.52; and
2. That the court determine the remaining issues and render judgment for PLAINTIFFS for the amount of this debt, plus interest as proven at trial.

///
///
///
///
///
///

**AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF:**

1. For reasonable attorneys' fees;

2. For costs of this action;

3. For further contributions according to proof; and

4. For such other and further relief as the court deems proper.


Dated: March __17__, 2017

        DeCARLO & SHANLEY,
        a Professional Corporation

        By: _____
        THOMAS DAVIS
        Attorneys for Plaintiffs,
        CARPENTERS SOUTHWEST
        ADMINISTRATIVE CORPORATION
        and BOARD OF TRUSTEES FOR THE
        CARPENTERS SOUTHWEST TRUSTS